# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAQUEL BRYANT, | 1:11cv01346 LJO DLB |
| Plaintiff, | ORDER DENYING MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT |
| v. | (Document 10) |
| SPECTRUM BRANDS, INC., a Wisconsin Corporation; and DOES 1-100, inclusive, | |
| Defendants. | |

Plaintiff Raquel Bryant ("Bryant") filed the instant motion for leave to file a first amended complaint on May 18, 2012.  The motion was heard on June 15, 2012, before the Honorable Dennis L. Beck, United States Magistrate Judge.  Ana de Alba appeared telephonically on behalf of Plaintiff.  John Yslas and Nan Chen appeared telephonically on behalf of Defendant Spectrum Brands, Inc.

## INTRODUCTION

Bryant filed a disability discrimination action against her former employer, Defendant Spectrum Brands, Inc. ("Spectrum"), in Tulare County Superior Court on July 12, 2011.  Spectrum answered the complaint in state court on August 11, 2011.  The next day, on August 12, 2011, Spectrum removed the action to this Court based on diversity jurisdiction.

1   On October 11, 2011, the parties submitted a joint scheduling report. According to the
2 report, Plaintiff anticipated amending her complaint to add a breach of contract action within
3 sixty (60) days.
4   On October 18, 2011, the Court issued a Scheduling Conference Order. The order did not
5 include a deadline to amend the pleadings, but set a deadline to complete non-expert discovery
6 for August 3, 2012, and a deadline to complete expert discovery for October 5, 2012. Trial is set
7 for December 10, 2012.
8   On May 18, 2012, Bryant moved for leave to file a first amended complaint. Spectrum
9 opposed the motion on June 1, 2012, and Bryant replied.

## FACTUAL BACKGROUND

In November 2007, Plaintiff began working for Spectrum in Tulare County as a Human Resource Generalist. In 2008, Spectrum evaluated her job performance as effective or higher. During the summer of 2008, when Bryant was offered a Human Resources position by another employer in her hometown of Kerman, California, Spectrum offered her a four thousand dollar per year raise and a four-day, ten-hour work schedule. Complaint ¶¶ 8-10.

In November 2008, Bryant was diagnosed with colorectal cancer. She underwent emergency surgery on November 24, 2008. Spectrum learned of her diagnosis and surgery on November 20, 2008, when Bryant spoke with her supervisor and when Bryant's husband faxed documents to Spectrum regarding Bryant's surgery and need for leave. Complaint ¶¶ 11-13.

Following surgery, on November 25, 2008, Bryant requested that she be allowed to work from home while out on disability. Bryant indicated that because her husband was employed by Spectrum, he would be able to take things to and from the office. Thereafter, in December 2008, Spectrum terminated Bryant's husband from employment. Complaint ¶¶ 14-15.

On January 5, 2009, Bryant returned to work. From that date through March 2, 2009, Bryant received chemotherapy treatment while working five days per week, including several ten hour days. She also had a pump attached every Wednesday night for medicine, which was disconnected every Friday afternoon around 4:00 p.m. Bryant later requested that the pump be disconnected on Friday evenings so she could stay at the office longer. Complaint ¶ 16.

On March 2, 2009, Bryant sent an e-mail to Human Resources Manager Heidi Ellingson and Facility Leader Ken Miller requesting a reasonable accommodation for her alleged disability. Bryant asked to telecommute every other week on Thursday and Friday for a four-month period. Alternatively, Bryant asked that if telecommuting was not possible, then she be allowed to utilize intermittent leave for the same period. Bryant explained that she needed to work from home because the chemotherapy required that she commute three hours per day in addition to working ten-hour days. Bryant indicated that she preferred not to use intermittent leave. Ellingson informed Bryant that an accommodation was not feasible because the job position required her to be physically present in the office. On March 10, 2009, Ellingson sent Bryant a letter summarizing their March 2, 2009 meeting. In the letter, Ellingson allegedly misrepresented that Bryant acknowledged a work-from-home arrangement was not feasible. Thereafter, Bryant continued to work, taking intermittent leave. Complaint ¶¶ 19-23.

On April 17, 2009, Bryant learned that her cancer metastasized and that she needed 60% of her liver removed. Following a second surgery, Bryant returned to the office on June 15, 2009, but still had to undergo an additional three months of chemotherapy. Complaint ¶¶ 24-25.

On July 27, 2009, Bryant sent an e-mail to Ellingson requesting that she be allowed to work remotely on her laptop while undergoing four hours of chemotherapy per week. Ellingson responded that she was not sure if Bryant had enough work to do remotely to keep her busy and that they would have to address whether this was appropriate on a week-by-week basis. Complaint ¶ 26.

Less than one month later, Ellingson told Bryant that others noticed she was absent from Human Resources telephone meetings. Ellingson provided no additional information regarding the dates of the meetings or who noticed Bryant's absence. On August 25, 2009, Ellingson placed Bryant on a Performance Improvement Plan for allegedly missing telephone meetings on July 9, 2009, August 13, 2009, and August 20, 2009. The plan became part of Bryant's personnel file. Bryant explained to Ellingson that she was on an approved vacation during the July 9, 2009 meeting, she was in a leadership meeting during the August 13, 2009 meeting, and she was on a call with Spectrum's Information Technology department because her computer

was not working during the August 20, 2009 meeting. Ellingson refused to amend or to remove the Performance Improvement Plan from Bryant's personnel file. Complaint ¶¶ 27-29.

On October 2009, Angi Larsen replaced Ellingson as Bryant's supervisor. In January 2010, Larsen completed Bryant's 2009 Performance Review and Evaluation. The only negative remarks concerned Bryant's relationships with other members of the Human Resources team due to an alleged inability to effectively communicate. Complaint ¶¶ 31-32.

On January 12, 2010, Larsen gave Bryant a final warning regarding her allegedly ineffective relationships with her peers in Human Resources and Payroll. The final warning contained issues with Bryant's performance and stated, for example, that although Bryant's attendance at weekly meetings had improved, her actual participation and involvement had been ineffective. Bryant spoke with Larsen about the final warning and requested more specific examples. Neither Larsen nor anyone at Spectrum provided her with additional information or advice. Complaint ¶¶ 33-34.

In January 2010, Larsen required Bryant to fly to Madison, Wisconsin to meet with members of the human resources department. Larsen promised to schedule meetings for Bryant, but failed to do so. Bryant met with her counterparts in Madison and asked them questions about their role at Spectrum and how Bryant could be a more valuable team member. Larsen subsequently informed Bryant that she was not communicating effectively. Complaint ¶¶ 35-36.

Between February 15, 2010, and April 2010, Bryant was placed on medical leave by her oncologist "because of the stress she was having to endure as a result of the harassment she was being subjected to by Larsen based on her disability." Complaint ¶ 37.

On May 24, 2010, Spectrum discharged Bryant from employment. Complaint ¶ 39.

On the date of her termination, Bryant received a separation packet from Spectrum. Prior to termination, Bryant was covered by portable group life insurance, which was six times Bryant's base pay of $59,000 for a total of $354,000. Upon termination, Spectrum failed to provide information regarding the life insurance's portability and Bryant's Consolidated Omnibus Budget Reconciliation Act ("COBRA") health benefit information. Upon receipt of her COBRA information about six weeks after her termination, Bryant noticed that no life insurance

1  portability information had been provided.  As Bryant had been told that she had stage four
2  incurable cancer, she wanted to make sure that she opted to continue paying the life insurance
3  premiums.  On August 24, 2010, Bryant contacted the insurance company, The Standard.  The
4  Standard informed Bryant that she needed a letter from Spectrum to secure continued life
5  insurance coverage.  Complaint ¶¶ 40-45.

6  On August 26, 2010, Bryant sent an e-mail to Adria McCarthy, who was the contact
7  person listed in the separation packet for insurance portability information.  On August 27, 2010,
8  Celena Venturelli, a Spectrum employee, informed Bryant that she would contact The Standard
9  and work with them to get the matter corrected.  Ms. Venturelli also told Bryant that she would
10 contact Bryant after hearing from The Standard.  As of the filing of the complaint, Spectrum
11 allegedly had failed and had refused to provide any additional information regarding portability
12 of Bryant's life insurance coverage.  Complaint ¶¶ 46-48.

13 Based on the above, Bryant asserted the following causes of action: (1) failure to provide
14 reasonable accommodation; (2) failure to engage in timely, good faith interactive process; (3)
15 disability discrimination in violation of FEHA; (4) harassment because of physical disability; (5)
16 discharge because of physical disability; (6) retaliation for exercising right to medical leave and
17 for seeking reasonable accommodation for her serious health condition; (7) failure to prevent
18 unlawful harassment, discrimination and retaliation; and (8) intentional infliction of emotional
19 distress.

20 **DISCUSSION**
21 **I.    Motion for Leave to File First Amended Complaint**
22         A.    Proposed Amendment
23 By the instant motion, Bryant seeks to amend her complaint as follows:  (1) to allege
24 breach of fiduciary duty pursuant to the Employee Retirement Income Security Act ("ERISA")
25 sections 404(a)(1), 405(a), 502(a)(3) and 29 U.S.C. sections 1104(a)(1), 1105(a), 1132(a)(3) as
26 the ninth cause of action; (2) to add an additional prayer for relief regarding the ERISA claim;
27 and (3) to change the allegation at paragraph 41 from "The amount of insurance was six times
28 BRYANT's base pay of $59,000 for a total of $354,000" to "The amount of insurance was **five**

1 **times** BRYANT's base pay of $59,000 for a total of **$295,000**." Declaration of Charles

2 Trudrung Taylor ("Taylor Dec.") ¶¶ 4-6 and Exhibit A.

3     B.    Legal Standard

4 Federal Rule of Civil Procedure Rule 15(a) provides that the court should "freely give

5 leave [to amend] when justice so requires." The United States Supreme Court has stated:

> [i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

9 Foman v. Davis, 371 U.S. 178, 182 (1962). The Ninth Circuit has summarized these factors to

10 include the following: (1) undue delay; (2) bad faith; (3) prejudice to the opponent; and (4)

11 futility of amendment. Loehr v. Ventura County Cmty. Coll. Dist., 743 F.2d 1310, 1319 (9th Cir.

12 1984). Granting or denial of leave to amend rests in the sound discretion of the trial court.

13 Swanson v. United States Forest Serv., 87 F.3d 339, 343 (9th Cir. 1996). Despite the policy

14 favoring amendment under Rule 15, leave to amend may be denied if the proposed amendment is

15 futile or would be subject to dismissal. Saul v. United States, 928 F.2d 829, 843 (9th Cir. 1991).

16     C.    Analysis

17         1.    Bad Faith

18     Bryant asserts that she is not acting in bad faith. According to Bryant, on December 21,

19 2011, she propounded a request for production of documents pertaining to her benefits. On

20 February 6, 2012, Spectrum produced over 900 responsive documents. After reviewing the

21 documents, Bryant's counsel met and conferred with defense counsel because there were a

22 number of documents that appeared to be missing from Spectrum's production, including a copy

23 of Bryant's life insurance policy and the summary plan description ("SPD") of the policy. Bryant

24 believed that the SPD was important to her ERISA claim. On April 13, 2012, Spectrum's

25 counsel provided the SPD. Taylor Dec. ¶¶ 11-14 and Exhibits B and C.

26     After reviewing the SPD, on May 7, 2012, Bryant's counsel provided defense counsel

27 with a proposed First Amended Complaint and requested a stipulation to allow Bryant to file the

28

amended complaint.  On May 11, 2012, Defense counsel declined to stipulate based on alleged prejudice and delay.  Taylor Dec. ¶¶ 15-16 and Exhibits D and E.

Bryant claims she did not allege the breach of fiduciary duty cause of action earlier because her counsel did not have sufficient information to properly plead such a cause.  Bryant explains that she initially anticipated filing an amended complaint to add a breach of contract action regarding Spectrum's failure to provide information regarding insurance portability.  According to Bryant's counsel, however, additional research indicated that the appropriate cause of action was one under ERISA, because the claims relate to employee-sponsored benefits.  Taylor Dec. ¶¶ 9-10.  Bryant states that she did not "hid[e] the ball" from Spectrum because the factual basis for her breach of fiduciary duty cause of action was contained in the original complaint at paragraphs 41 through 48.

Spectrum contends that Bryant unduly delayed in seeking leave to amend, but does not argue that Bryant acted in bad faith.  Accordingly, the factor weighs in favor of granting leave to amend.

### 2. Undue Delay

Bryant represents that there is no undue delay because the Scheduling Conference Order did not set a deadline to amend the pleadings and that motion to amend is brought within the deadline set for non-dispositive motions, which must be heard by October 26, 2012.  Spectrum counters that Bryant unduly delayed in moving to amend because the facts relating to the additional claim were known to Bryant before the original complaint was filed.  The Court agrees.

Where the facts and theory have been known to the party seeking amendment since the inception of the case, courts will not review favorably late amendments to assert new theories.  Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1995); AmerisourceBergen Corp. v. Dialysis West, Inc., 465 F.3d 946, 953 (9th Cir. 2006) (in evaluating undue delay, court inquires as to "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading").  Here, Spectrum correctly notes Bryant's admission that the ERISA claim alleges no new facts and is based on facts already alleged in the original complaint.  Such an

admission indicates Bryant could have (and should have) brought any purported ERISA claim at the outset of this litigation, nearly a year ago. Bryant also was aware of such a claim at the time of the joint scheduling report in October 2011 and at the time of her deposition in January 2012. Bryant has provided no basis to explain her delay in seeking leave to amend until approximately two months before the discovery cutoff date. Bryant appears to suggest that she was required to conduct discovery before asserting her breach of fiduciary duty claim. This suggestion is not persuasive given that discovery resulted in no substantive, proposed changes to the factual allegations of her original complaint.

Accordingly, the Court finds that this factor weighs against granting leave to amend.

### 3. Prejudice to Spectrum

Bryant contends that Spectrum will not suffer prejudice from the amendment because: (1) the facts underlying the breach of fiduciary duty claim were plead in the original complaint; (2) Bryant's discovery responses put Spectrum on notice as Bryant specifically included the "loss of value of the life insurance which [Bryant] could port" as an item of damages (Taylor Dec. ¶ 19 and Exhibit F); (3) prior to Bryant's deposition on January 17, 2012, Bryant's counsel informed defense counsel that Bryant would be seeking to amend Plaintiff's complaint to allege various claims related to Spectrum's failure to provide Plaintiff with documentation to allow her to port her company sponsored life insurance policy and defense counsel questioned Bryant regarding the life insurance policy at issue (Taylor Dec. ¶¶ 20-21 and Exhibits G and H); and (4) discovery does not close until August 3, 2012, which should allow Spectrum time to propound any needed discovery regarding the proposed cause of action.

Spectrum counters that it will suffer undue prejudice if Bryant is allowed to amend the complaint. In determining prejudice, Spectrum avers that the court must consider whether the proposed amendment to the pleadings would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction. Block v. First Blood Assocs., 998 F.2d 344, 350 (2d Cir. 1993) (citation omitted). In this case, the new claim will require Spectrum to expend significant resources in conducting

1  additional discovery during the approximate month and a half before the discovery deadline. At
2  the hearing, Spectrum elaborated on the prejudice it would suffer if Bryant were granted leave to
3  amend the complaint at this time. Spectrum indicated that it would be required to re-depose
4  Bryant, propound additional document requests and conduct additional depositions (employees
5  of The Standard and employees of Spectrum) to address the new claim, all of which would have
6  to be completed before the August 3, 2012 discovery deadline. Spectrum also anticipated filing a
7  simultaneous motion to dismiss the proposed claim. These tasks would require Spectrum to
8  expend significant additional resources to conduct discovery and complete the additional motion
9  practice. Moreover, Spectrum likely would be unable to complete this additional discovery and
10 motion practice within the approximate month-and-a-half before the scheduled discovery
11 deadline, resulting in a loss of the current schedule and the trial date. Losing these dates will
12 significantly delay resolution of this dispute. For these reasons, the Court finds that this factor
13 weighs against granting leave to amend.

14      4.    Futility of Amendment

15  Bryant contends that her proposed amendment is not futile because (1) California
16  Insurance Code § 10209 required Spectrum to inform Bryant of her right to convert the insurance
17  plan; (2) the SPD indicates that Bryant's group insurance protection amount was five times her
18  salary and she has three years to bring an action related to her policy; and (3) Spectrum allegedly
19  breached its fiduciary duty when it agreed to follow up with the insurance company, but did not.
20  Taylor Dec. ¶ 14 and Exhibit C.

21  In response, Spectrum acknowledges that pleading challenges are usually deferred until
22  after leave to amend is granted and the amended pleading is filed. SAES Getters S.p.A v.
23  Aeronex, Inc., 219 F.Supp.2d 1081, 1086 (S.D. Cal. 2002); Netbula, LLC v. Distinct Corp., 212
24  F.R.D. 534, 539 (N.D. Cal. 2003). However, Spectrum argues that leave to amend may be
25  denied if the proposed amendment is futile or would be subject to dismissal. Saul v. United
26  States, 928 F.2d 829, 843 (9th Cir. 1991).
27  //
28  //

        a.       State Insurance Law

Spectrum contends that Bryant miscites Cal. Ins. Code § 10209 for the proposition that an employer is required to "issue a certificate to BRYANT informing her about the insurance protection and to whom it was payable and of BRYANT's right, within 31 days of termination, to convert the Plan . . ." Taylor Dec., Exhibit A [Proposed FAC], ¶ 147. Spectrum argues that the statute does not create a duty to give notice of conversion rights at termination and California courts have held that no such duty to provide notice at termination exists. Cal. Ins. Code § 10209(a)(2); Hinckley v. Bechtel Corp., 41 Cal.App.3d 206 (1974) (allegation that employer failed to give notice of conversion privileges was insufficient to establish breach of contract).

Spectrum further argues that to the extent Bryant seeks to rely on Cal. Ins. Code § 10209 in her amended complaint, she must bring a state law claim. Spectrum explains that § 10209 is a state law issue, which has not been preempted by ERISA. Henkin v. Northrup Corp., 921 F.2d 864, 867 (9th Cir. 1990) ("§10209 is a state law 'regulating insurance' and hence is saved from ERISA preemption."). Spectrum asserts that Bryant makes a fatal mistake in bringing this claim under ERISA.

Bryant failed to respond to Spectrum's arguments and appears to have abandoned her reliance on California Insurance Code section 10209(a)(2).

        b.       ERISA

Spectrum believes the ERISA claim based on its alleged failure to provide notice of Bryant's conversion rights under the group life insurance is futile because there is no requirement under ERISA or state law requiring Spectrum to provide additional notice of these rights at the time of termination.

Courts have held that an ERISA fiduciary has no duty to inform an employee of their conversion rights at termination. See e.g., Castello v. Gamache, 593 F.2d 358, 359–61 (8th Cir. 1979) (holding that employer had no duty to provide notice of Summary Policy Description ("SPD") and conversion rights); Pearson v. Northwest Airlines, Inc., 659 F.Supp.2d 1084, 1094 (C.D. Cal. 2006) (finding that the administrator of a long-term disability plan had no obligation under ERISA to notify a former employee of her right to apply for benefits); Neuma, Inc. v. E.I.

1  DuPont de Nemours and Co., 133 F.Supp.2d 1082, 1089 (N.D. Ill. 2001) (holding where an
2  employee was aware of her termination, and there is no direct command otherwise, a fiduciary is
3  under no additional obligation to notify a participant or beneficiary of the relevant conversion
4  period dates under the plan).

   Bryant admits that ERISA fiduciaries are under no affirmative obligation to make sure participants understand plan terms on their own initiative, but once a participant has initiated an inquiry, the fiduciary must give complete and accurate information in response.  Reply, p. 6.  Bryant asserts that materially misleading communications regarding plan administration will support a claim for breach of fiduciary duty.  Drennan v. Gen. Motors Corp., 977 F.2d 246, 251 (6th Cir. 1992).  Bryant indicates that her breach of fiduciary duty claim is premised on Spectrum's alleged breach of its duties by failing and refusing to provide any additional information regarding the portability of Bryant's life insurance coverage after Celena Venturelli informed Bryant that she would contact The Standard and work with the insurer to get the matter corrected.  Doc. 16, p. 5.  Bryant asserts that she detrimentally relied on Ms. Venturelli's misrepresentations and did not follow up with The Standard herself despite receiving notice directly from The Standard regarding the deadline for her portability application.

   Based on the allegations of the complaint and the documents submitted by the parties, Bryant's proposed ERISA claim is futile.  First, Bryant has not challenged Spectrum's argument that an ERISA fiduciary does not have a duty to provide to inform an employee of their conversion rights at termination.  At the hearing, Bryant's counsel admitted reviewing Spectrum's argument and electing to focus on a different "standard."

   Second, Bryant's allegation that she did not receive any information related to portability at the time of her termination is contradicted by her own allegations.  In relevant part, Bryant alleges in her complaint as follows:

> 39.   On or about May 24, 2010, SPECTRUM discharged BRYANT. . .
>
> 40.   On or about May 24, 2010, BRYANT received a **separation packet** from SPECTRUM ("separation packet").
> . . .

>   42.   Upon termination, SPECTRUM was required to provide information regarding the life insurance's portability but failed to do so.
>
>   . . .
>
>   46.   On or about August 26, 2010[,] BRYANT sent an e-mail to Adria McCarthy who was listed in the **separation packet** as the person to contact for **additional information about insurance portability**.

Complaint ¶¶ 39-40, 46 (emphasis added). It is apparent from these allegations that Bryant received information in her separation packet regarding insurance portability, along with a contact person for **additional** information.

Third, and finally, the nature of Ms. Venturelli's representation does not support a claim for breach of fiduciary duty under ERISA. Drennan, 977 F.2d 246, 251 (6th Cir. 1992) ("Misleading communications to plan participants 'regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for breach of fiduciary duty."); Berlin v. Michigan Bell Telephone Co., 858 F.2d 1154, 1163 (6th Cir. 1998) (discussing that cases generally deal with misrepresentations concerning the terms of an ERISA plan). Ms. Venturelli made no statement regarding Bryant's eligibility for portability, the extent of her benefits under the plan or the terms of the plan.[1]

Bryant admits that on August 24, 2010, The Standard sent her a letter that "clearly stated that in order to port her life insurance policy BRYANT had to, among other things, return a completed application to 'The Standard within **31 days** from the date of this e-mail or within 31 days of your employment termination, whichever is later.'" Opposition, p. 7. After receiving this notice, Bryant informed Spectrum that The Standard "need[ed] a letter from Spectrum Brands stating that [she] was not given the information to port [her] life insurance." Exhibit 1 to Declaration of Nan Chen ("Chen Dec."). In direct response, Ms. Venturelli provided Bryant with a copy of a document titled "Employee Benefits Overview" with specific information regarding life insurance. Ms. Venturelli also told Bryant that Spectrum would contact Standard, would "work with them to get this corrected," and would send Bryant an email as soon as she heard

---

[1] The facts relied on in this determination are derived from the complaint and the documents on which the complaint necessarily relies. Further, both parties relied on consideration of such additional documents in their briefing on the instant motion.

back from The Standard.  Exhibit 1 to Chen Dec.  Bryant claims she relied on these statements instead of applying for portability and "she did not follow up with The Standard directly."  Reply, p. 7.  However, Ms. Venturelli did not represent that she would submit an application for Bryant, that Bryant would be eligible for any portability or that she would go beyond Bryant's stated request for a letter from Spectrum to Standard.  Further, Ms. Venturelli contacted The Standard by e-mail on August 27, 2010, at 1:25 p.m., and Bryant subsequently informed Ms. Venturelli on August 27, 2010, at 5:35 p.m. that she herself would contact The Standard after realizing she could convert her long term disability benefits.  Exhibit 1 to Chen Dec., p. 14.

For these reasons, the Courts finds that the proposed amendment to add an ERISA claim is futile and this factor weighs against granting leave to amend.

## CONCLUSION AND ORDER

Based on the above, Bryant's motion for leave to file a first amended complaint is DENIED.

IT IS SO ORDERED.

Dated:   **June 19, 2012**                    /s/ **Dennis L. Beck**
                                            UNITED STATES MAGISTRATE JUDGE